UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    For Online Publication Only
----------------------------------------------------------------X
CARLOS GARCIA,

                        Petitioner,

            -against-                           **MEMORANDUM AND ORDER**
                                                16-CV-3640 (JMA)
DAVID HALLENBACK,

                                                **FILED**
                        Respondent.             **CLERK**
----------------------------------------------------------------X
**APPEARANCES:**                                9/18/2018 2:16 pm

                                                **U.S. DISTRICT COURT**
Carlos Garcia                                   **EASTERN DISTRICT OF NEW YORK**
        _Pro_ _se_ Petitioner                   **LONG ISLAND OFFICE**

Thomas C. Costello, Assistant District Attorney
Alyson Gill, Assistant Attorney General
Suffolk County District Attorney's Office
200 Center Drive
Riverhead, NY 11901
        *Attorneys for Respondent*

**AZRACK, United States District Judge:**

On March 14, 2012, Carlos Garcia ("Garcia") entered a guilty plea to one count of Criminal

Sale of a Controlled Substance in the First Degree, in violation of New York Penal Law §

220.43(1), and one count of Criminal Sale of a Firearm, in violation of New York Penal Law §

265.13(2).  On July 31, 2013, Garcia was sentenced to eight (8) years of incarceration on the

Criminal Sale of a Controlled Substance count, to run concurrent with nine (9) years of

incarceration on the Criminal Sale of a Firearm count, followed by five (5) years of post-release

supervision.

Garcia, proceeding pro se, petitions this Court for a writ of habeas corpus pursuant to 28

U.S.C. § 2254, raising grounds of ineffective assistance of counsel.  For the following reasons, the

petition is DENIED.

1

## I.  BACKGROUND

The following facts are taken from the petition and the state court record.[1]

### A. <u>Factual Background</u>

On January 6, 2010, at approximately 2:25 P.M., Garcia was at his home in Suffolk County, New York.  (Plea Tr. 11.)  While there, Garcia was in possession of 2.5 ounces of cocaine, which he eventually sold to an individual for a sum of money.  (Plea Tr. 11-12.)  In addition, from October 21, 2009 through May 5, 2010, Garcia acted in concert with another individual and engaged in the sale of more than ten firearms in Suffolk County, New York and Springhill, Florida.  (Plea Tr. 12-13.)  Garcia's firearms sale included the following:

- October 21, 2009: Garcia sold two firearms in exchange for $1,300 in Suffolk County, New York.
- January 12, 2010: Garcia sold two firearms in exchange for $1,100 in Suffolk County, New York.
- January 18, 2010: Garcia sold one firearm in exchange for $375 in Suffolk County, New York.
- May 5, 2010: Garcia participated in the sale of two firearms in Suffolk County, New York.
- June 29, 2010: Garcia sold five firearms in exchange for $2,000 in Suffolk County, New York

(Plea Tr. 13-16.)  Ultimately, a search warrant was executed at Garcia's home and he was arrested for the abovementioned conduct.  On July 9, 2010, Garcia was indicted by a grand jury for Criminal Sale of a Controlled Substance in the First Degree, Criminal Sale of a Firearm in the First Degree, and other related charges.  (<u>See</u> Indictment, at 238-245, ECF No. 7.)

On August 17, 2011, a <u>Huntley</u> hearing was held in Suffolk County Superior Court, during which the trial court heard testimony from Detective Philip Alvarez regarding statements made by

---

[1] "Plea Tr." refers to the guilty plea transcript, <u>People v. Garcia</u> Guilty Plea Tr., March 14, 2012, ECF No. 7, at 10-29.  "Hearing Tr." refers to the <u>Huntley</u> hearing transcript, <u>People v. Garcia</u>, Hearing Tr., August 17, 2011, ECF No. 7, at 158-194.  "Sentencing Tr." refers to the transcript for the sentencing proceedings, <u>People v. Garcia</u>, Sentencing Tr., July 31, 2013, ECF No. 7, at 30-49.

Garcia.  (Hearing Tr. 1-25.)  Detective Alvarez testified that on July 2, 2010, he responded to

Garcia's home to execute a search warrant.  (Hearing Tr. 5-8.)  After Garcia was informed that

police officers were going to search his home pursuant to this warrant, Garcia stated that there was

a loaded firearm in the bedroom, signed a consent form to search his vehicle, and while, signing

the consent form, made certain statements to officers.  (Hearing Tr. 8-10.)  Following testimony,

the court heard arguments from defense counsel and the Government.  (Hearing Tr. 25-31.)

Subsequently, the trial court determined that Garcia's statement "referring to a loaded gun under

a pillow" was a "spontaneous statement[]" admissible at trial and that his other statements in

connection with his signing of the consent form were also admissible.  (Hearing Tr. 32-35.)

## B. The Guilty Plea

On March 14, 2012, Garcia, with counsel present, appeared before the Honorable C.

Randall Hinrichs in Suffolk County Court and entered a guilty plea.  (Plea Tr. 1-20.)  Prior to

commencing the plea allocution, the trial court explained that the proposed disposition was a plea

to two counts, Criminal Sale of a Controlled Substance in the First Degree and Criminal Sale of a

Firearm in the First Degree, and that, as part of the plea, the court would agree to cap the sentence

at no more than ten years, with five years of post-release supervision.  (Plea Tr. 2-4.)[2]  The trial

court confirmed that Garcia had sufficiently discussed the plea with his attorney, he was satisfied

with his attorney's representation, and was competent to proceed with a guilty plea.  (Plea Tr. 7-

8.)  Additionally, the trial court reviewed the constitutional rights Garcia was forfeiting by

choosing to plead guilty.  (Plea Tr. 8-9.)  Garcia confirmed that he understood the immigration

consequences of his guilty plea, the appellate waiver that he entered into, and that he was pleading

guilty voluntarily and of his own free will.  (Plea Tr. 9-11.)  Additionally, Garcia proceeded with

---

[2] It appears that prior to the trial court agreeing to a ten-year maximum, the prosecution had been seeking a sentence of twelve years.  (Plea Tr. 3.)

a factual allocution, during which he admitted to the abovementioned sales of controlled substances and firearms. (Plea Tr. 11-16.) The trial court informed Garcia that once he proceeded with his guilty plea that he could not withdraw it, Garcia then confirmed that he was pleading guilty to both charges. (Plea Tr. 18-19.)

On July 31, 2013, Garcia appeared in Suffolk County Court for the purposes of sentencing. The prosecution sought a sentence of eight years of incarceration as to the charged of Criminal Sale of a Controlled Substance in the First Degree, to run concurrent with nine years of incarceration as to the charge of Criminal Sale of Firearms in the First Degree. (Sentencing Tr. 7-17.) Prior to imposing sentence, defense counsel requested an adjournment, arguing that "[i]n light of the fact I didn't know exactly what the District Attorney's position was with his sentencing or People's recommendation, I didn't have time to go over to the corrections center to communicate those particular numbers with [Garcia]." (Sentencing Tr. 3.) The Government opposed the sentencing adjournment, arguing that Garcia and counsel were both aware of the ten-year statutory cap at the time of the guilty plea. (Sentencing Tr. 5.) The court denied defense counsel's request for an adjournment, finding that defense counsel and Garcia were aware that he was facing a maximum sentence of ten years' imprisonment, and emphasizing that the prosecution's suggested sentence was below the court's ten-year cap, and there was no "legal need to adjourn the sentencing." (Sentencing Tr. 5-6.)

After hearing arguments from counsel regarding the sentence, the trial court imposed the sentence recommended by the prosecution—eight years of incarceration as to the charge of Criminal Sale of a Controlled Substance if the First Degree, to run concurrent with nine years of incarceration as to the charge of Criminal Sale of Firearms in the First Degree, followed by five years of post-release supervision. (Sentencing Tr. 7-17.)

4

### C. Post-Conviction Proceedings

#### 1. The Direct Appeal

On February 11, 2015, Garcia, through counsel, filed a motion pursuant to Section 470.15(2)(c) of the New York Criminal Procedure Law, contending that his sentence was harsh and excessive and that "reducing the sentence on the firearm conviction from the determinate 9 years to 8 years to coincide with the 8 years on the criminal sale of a controlled substance – since the sentences run concurrently, would meet the interest of justice in this case." (See Def.'s 470.15 Mot., Feb. 11, 2015, at 1- 6, ECF No. 7.) On June 17, 2015, the Second Department affirmed Garcia's sentence, finding that the "waiver of his right to appeal was valid, and precludes review of his contention that the sentence imposed was excessive." People v. Garcia, 129 A.D.3d 988 (2d Dep't. 2015). On August 12, 2015, the New York Court of Appeals denied Garcia's request for leave to appeal. See People v. Garcia, 26 N.Y.3d 929 (2015).

#### 2. The Section 440.10 and 440.20 Motion

On February 27, 2015, Garcia, proceeding pro se, filed a motion pursuant to Sections 440.10 and 440.20 ("Section 440 motion") of the New York Criminal Procedure Law. (See Def.'s §§ 440.10 and 440.20 Mot. ("Def.'s Section 440 Mot."), Feb. 27, 2015, at 70-88, ECF No. 7.) In this motion, Garcia claimed that: (1) he received ineffective assistance of counsel due to a conflict of interest as well as "threat[s] and misinformation" presented to him by counsel; (2) the trial court failed to "ensure that [he], before pleading guilty, ha[d] a full understanding of what the plea connotes and its consequences"; (3) his guilty plea was not knowingly and voluntarily made; (4) his guilty plea was "induced by an unfulfilled promise"; and (5) his guilty plea was "obtained in violation of a right of the defendant under the constitution." (Id. at 79-88.) On May 27, 2015, the Supreme Court of Suffolk County denied the Section 440 motion in its entirety. (See Court Order

5

Denying Def.'s Section 440 Mot., May 27, 2015, at 113-116, ECF No. 7.)  The Supreme Court of

Suffolk County found that "the [t]rial [c]ourt unambiguously and clearly set forth the terms of the

plea deal" and "the sentence as imposed . . . fell within the parameters of the bargain as set forth

during the plea proceeding and [ ] was in accordance with the law."  (Id. at 114.)  Additionally the

court determined that counsel provided effective assistance, particularly as "the plea bargain was

clearly advantageous and . . . the record belies defendant's claim of ineffective representation."

(Id. at 115.)  On July 14, 2015, Garcia sought leave to appeal this denial to the Second Department;

the Second Department denied Garcia's application on August 27, 2015.   (See Court Order

Denying Leave to Appeal Def.'s Section 440 Mot., Aug. 27, 2015, at 150, ECF No. 7.)

### 3. The Instant Petition

Garcia filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

on June 20, 2016, raising grounds of ineffective assistance of counsel, particularly that counsel

failed to explain the parameters of his guilty plea.  (See Pet. at 6, ECF No. 1.)[3]  For the reasons

discussed below, the instant petition is DENIED in its entirety.

## II. DISCUSSION

### A. Standards of Review

#### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L.

No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas

---

[3] Though not articulated in the body of the petition, Garcia asks the Court to consider the arguments raised in his Section 440 motion, a Grievance Committee Report concerning a suspension counsel received regarding his representation of another matter, and Garcia's complaints to the Grievance Committee concerning counsel's representation.  See Pet. at 7-40; see also In re Meenan, 117 A.D.3d 42 (2d Dep't. 2014).  The Court has reviewed all of Garcia's submissions and to the extent that this material is relevant to the Court's determination, it is addressed in the Court's decision.  The Court uses the pagination assigned by the electronic case filing system for ECF No. 1.

corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under AEDPA, a prisoner may file a habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To make that showing, the petitioner must demonstrate: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions. See id. § 2254.

### 2. Exhaustion

A court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts. 28 U.S.C. § 2254(b)(1)(A). This requirement first allows state courts the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Thus, a petitioner must show that he fairly presented his federal claim to the highest state court from which a decision can be rendered. Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc). Although the petitioner need not "'cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'" Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)).

If a petition is a "mixed petition," containing both exhausted and unexhausted claims, the court can deny the unexhausted claims if they are meritless. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Ortiz v. Marshall, No. 08-CV-8815, 2009 WL 3170300, at *7 (S.D.N.Y. Sept. 30, 2009) ("Federal courts retain the

7

discretion to deny a petition including unexhausted claims on the merits when it deems those claims to be patently frivolous.").

### 3. Procedural Default

A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  Martinez v. Ryan, 566 U.S. 1, 9 (2012).  This procedural bar applies even if the state court addressed a claim's merits in the alternative, but decided that claim on independent procedural grounds.  Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original).  When a state court has dismissed a claim based on a state procedural rule, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions discussed below.

To overcome a procedural bar a petitioner must show either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  To demonstrate cause, a petitioner must put forth that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by

8

officials … made compliance impracticable." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). A petitioner may also satisfy the cause requirement by demonstrating that his attorney's failure to comply with state procedural rules denied him constitutionally adequate representation. <u>See</u> <u>Tavarez v. Larkin</u>, 814 F.3d 644, 650 (2d Cir. 2016), <u>cert. denied</u>, 137 S.Ct. 106 (2016); <u>Restrepo v. Kelly</u>, 178 F.3d 634, 640 (2d Cir. 1999).

As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petition to establish cause) not only "created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage…" <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis in original).

Even if a petitioner cannot establish cause and prejudice, a federal court may excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result. For example, a petitioner can overcome a procedural bar by showing "that he is actually innocent of the crime for which he has been convicted." <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002) (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995)). To prevail, the petitioner must put forth "new reliable evidence … that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." <u>Schlup</u>, 513 U.S. at 324.

### 4. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

9

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.SC. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'"  Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring).  A decision involves an "unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."  Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong.  Id. at 409–10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'"  Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'"  Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)). This standard is "'difficult to meet,'" and for good reason.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013)), reh'g denied, 134 S. Ct. 2835 (2014).  A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 1702.

10

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "'unless objectively unreasonable in light of the evidence presented in the state court proceeding.'" Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

### 5. Pro Se Status

A petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). However, in light of Garcia's pro se status, the Court construes his submissions liberally and interprets them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). This liberal interpretation of the petition "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

### B. Claims for Relief

As mentioned above, Garcia contends that he was deprived effective assistance of counsel as his attorney failed "to discuss the parameters of the plea." (See Pet. at 6.) This argument was raised in his Section 440 Motion; Garcia argued that he "was not informed by counsel and the Assistan[t] District Attorney as to the parameters of the plea." (See Def.'s Section 440 Mot. at 80.) The Suffolk County Supreme Court rejected this claim, stating that "the [t]rial [c]ourt

11

unambiguously and clearly set forth the terms of the plea deal," finding that "the plea bargain was

clearly advantageous and . . . the record belies [Garcia's] claim of ineffective representation." (See

Court Order Denying Def.'s Section 440 Mot. at 114-115.)

This ground of ineffective assistance of counsel is the only ground Garcia adequately sets

forth in the instant Petition; however, he asks the Court to consider the facts raised in his Section

440 motion. In Garcia's Section 440 motion, he claimed that he received ineffective assistance of

counsel as "a conflict of interest arose when counsel did not present his own ineffectiveness to [the

trial court] [ ] allowing the sentence to continue without [Garcia] knowing what he was to be

sentence[d] to" and his guilty plea was "induced by counsel's threat and misinformation" and as a

result was "not knowingly, voluntary[ily] and intelligently made." (See Pet. at 18-24.) Though

Garcia fails to adequately raise the grounds for ineffective assistance of counsel in the instant

petition, the Court proceeds to address them and finds them to be wholly without merit.[4]

### 1. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his

trial counsel's performance was so inadequate that his Sixth Amendment right to counsel was

violated. See Strickland v. Washington, 466 U.S. 668, 690 (1984). Therefore, the petitioner must

"(1) demonstrate that his counsel's performance 'fell below an objective standard of

reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice'

---

[4] Additionally, Garcia asked the Court to consider a Grievance Committee decision regarding trial counsel, Michael Meehan, Esq., for which counsel received a six-month suspension for neglecting legal matters and withdrawing from specific employment. See In re Meenan, 117 A.D.3d 42 (2d Dep't. 2014). The Court has reviewed this decision and finds that none of the conduct contained in the decision is related to Garcia's case. The Court is not convinced that Mr. Meenan's disciplinary proceedings on unrelated matters has any relevance to whether Garcia received effective assistance of counsel in the instant matter.

Further, attached to Garcia's petition are his complaints to the Grievance Committee in which he complains of his counsel's performance and his desire for new counsel. Upon review of the materials, it appears that the Grievance Committee rejected Garcia's complaints. (See Pet. at 39.) Garcia does not provide guidance as to the applicability of these documents to his grounds for ineffective assistance of counsel. The Court has reviewed all materials and finds that they do not alter the Court's determinations that counsel provided effective assistance.

arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 688, 693).  First, it must be demonstrated that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687).   Next, a petitioner must show that he was prejudiced by said deficient performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010) (internal quotation marks and citation omitted).

Under AEDPA, federal courts must grant state courts substantial "deference and latitude" when considering claims for ineffective assistance of counsel already rejected at the state court level.  Harrington v. Richter, 562 U.S. 86, 101 (2011).

The Court first addresses Garcia's argument that he received ineffective assistance of counsel as his attorney failed to inform him of the parameters of his guilty plea.  This claim was raised in Garcia's Section 440 motion and the Supreme Court of Suffolk County decided the claim on the merits, finding that the parameters of the plea were "unambiguously and clearly set forth" and that a claim otherwise "is contradicted by the record."  (See Court Order Denying Def.'s Section 440 Mot. at 114.)  Accordingly, the Court proceeds to evaluate the merits of this claim and finds that it does not provide a basis for habeas relief.

As determined by the state court, the underlying record shows that the trial court informed Garcia that he was facing a statutory maximum of ten years' incarceration with five years of post-release supervision.  (Plea Tr. 3, 9.)  Accordingly, Garcia's claim that he was unaware of the parameters of his guilty plea is directly contradicted by the record of the plea proceeding.

13

Therefore, Garcia cannot demonstrate that his counsel committed an error and the Court finds that the state court's decision rejecting Garcia's claim was not contrary to, or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts.  See 28 § U.S.C. 2254(d)(1).

Though not adequately raised in his petition, in Garcia's attached Section 440 motion he adds additional grounds of ineffective assistance of counsel, including that his counsel was ineffective because "a conflict of interest arose when counsel did not present his own ineffectiveness to [the trial court]."  (Pet. at 18.)  This claim is taken directly from Garcia's Section 440 motion.  Although the Suffolk County Supreme Court did not specifically address this ground in its order, it denied all of Garcia's grounds of ineffective assistance of counsel as meritless.  It is clear that "[a] defendant's Sixth Amendment right to counsel includes a right to conflict-free representation."  Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000) (quoting United States v. Rogers, 209 F.3d 139, 143 (2d Cir. 2000)).  An actual conflict of interest forms when "during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'"  Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (quoting Cuyler v. Sullivan, 446 U.S. 335, 356 n. 3 (1980)).  Further "[w]hen counsel is burdened by an actual conflict that adversely affects performance, the defendant is not required to demonstrate prejudice; prejudice is presumed."  Armienti, 234 F.3d at 824.  In contrast, where a petitioner is claiming that a potential conflict of interest exists, the petitioner must still prove that he was prejudiced as a result.  Id.  Further, to demonstrate that counsel's conflict had an adverse effect on the representation, the petitioner must "demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."

14

United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994) (internal quotation marks and citation omitted).

Garcia has failed to articulate any actual or potential conflict of interest. Garcia's conclusory statements that a conflict arose when his attorney failed to raise his own ineffectiveness to the trial court does not rise to the level of a conflict of interest. In sum, a conflict of interest is not established "simply by expressing dissatisfaction with his attorney's performance." United States v. White, 174 F.3d 290, 296 (2d Cir. 1999)

Additionally, in Garcia's attached Section 440 motion he asserts that as he had pending grievances against his attorney and as the trial court would not allow him retain another attorney, he received ineffective assistance of counsel. (Pet. at 18-19.) Ultimately, "the Supreme Court has held that [the Sixth Amendment] does not guarantee an absolute right to the counsel of one's choosing even for those with retained counsel, a meaningful attorney-client relationship, or complete satisfaction with counsel's performance." Soltero v. Kuhlman, No. 99 Civ. 10765, 2000 WL 1781657, at *3 (S.D.N.Y. Dec. 4, 2000) (internal quotation marks and citations omitted). There is nothing in the underlying record that supports Garcia's contention that he was not permitted to retain an attorney of his own choosing. The Court rejects this ground, finding it conclusory and when a claim is "'insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous'" a court may reject it. Angel v. Garvin, No. 98 Civ. 5384 (LTS)(THK), 2001 WL 327150, at *8 (S.D.N.Y. Apr. 3, 2001) (quoting United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970)).

The Court finds that Garcia is unable to satisfy the first prong in Strickland, as he has not demonstrated any error by counsel; however, even if Garcia could demonstrate that counsel erred, he has not satisfied the second prong in Strickland; he has not demonstrated that he was prejudiced.

15

As discussed above, "[i]n the context of a guilty plea, Strickland's prejudice prong requires a defendant to demonstrate a reasonable probability that, 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Munson v. Rock, 507 Fed. Appx. 53, 56 (2d Cir. 2013) (quoting Hill, 474 U.S. at 59). In the instant matter, Garcia received the benefit of a considerably reduced sentence; he was facing 25 years of incarceration if convicted after trial, and ultimately "there is no reasonable probability that Petitioner would not have taken the plea agreement." Hayes v. Tracy, No. 03-CV-5237(SLT), 2005 WL 486912, at *6 (E.D.N.Y. Jan. 11, 2005).

Additionally, Garcia argues that as a result of his attorney's ineffective representation and "threat[s] and [ ] misinformation" his guilty plea was rendered invalid and was "not knowingly, voluntary[ily] and intelligently made." (See Pet. at 18-24.) It is well settled that when faced with a challenge to a guilty plea, the Court is to consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In other words, "[a] plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weight his options rationally.'" Manzullo v. People of New York, No. 07-CV-744, 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988)).

When looking to the record of the plea proceedings, Garcia stated that he was pleading guilty of his own free will, that he understood the constitutional rights he was forfeiting by choosing to plead guilty, that he had sufficiently consulted with his attorney regarding the plea,

16

and engaged in a detailed factual allocution. (Plea Tr. 7-19.)  Upon review of the underlying record, the Court concludes that there is nothing in the record to indicate that Garcia's plea was involuntary, unknowing, or unintelligent or that he received ineffective assistance of counsel. Garcia provides no details about the alleged "threat[s]" mentioned in his petition.  As for Garcia's allegations concerning "misinformation," Garcia claims he was under the impression that, if he cooperated with the prosecution, he would receive either:  (1) time served; (2) two years; or (3) five years.  Ultimately, he cooperated and received a nine year sentence.  Garcia, however, does not explain why he thought that he was going to receive a lower sentence.  The only explicit promise on the record was the trial court's promise to limit the maximum sentence to ten years. Moreover, Garcia does not provide any evidence showing that his alleged misapprehension concerning sentencing was due to defense counsel's conduct.  Accordingly, his ineffective assistance claim fails.  Furthermore, Garcia cannot show any prejudice related to his plea because there is not a reasonable probability that, absent Garcia's alleged misapprehension about sentencing, he would have rejected the plea agreement and gone to trial.

### III. CONCLUSION

Because the Court has considered all of Garcia's arguments and found them meritless, the petition is DENIED.  A certificate of appealability shall not issue because Garcia has not made a substantial showing that he was denied a constitutional right.  See 28 U.S.C. § 2253(c)(2).  I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal.  Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court is respectfully directed to mail a copy of this Order to petitioner and

to close the case.

**SO ORDERED.**

Dated:  September 18, 2018
Central Islip, New York

                                          <u>       /s/ (JMA)                     </u>
                                          JOAN M. AZRACK
                                          UNITED STATES DISTRICT JUDGE